The uncertainty in which the principles of our land law are involved is certainly a subject of much regret. It has no doubt originated in some degree, from the circumstance of going beyond the grant in the trial of ejectment.
The acts of the legislature in Ird. 368, 385, 448, 483, 589, show clearly their design that a preference should be given to the oldest entries in making surveys; that there should not be interference is obvious from the tenth section of the Act of November, 1777, c. 1, and the seventh section of the Act of 1779, c. 4.
Since questions under the land laws frequently occur, and are earnestly contested, let us inquire what *Page 18 
was the contemporaneous construction of these acts. In early times we have but few judicial decisions, to which we can advert; but we can easily discern what was the consideration and view of society on the subject optimus interpres legum consuetudo.
As it was the interest of individuals to inform themselves of the provisions of the land law, all classes being in the habit of taking up land, it would seem that the practice which obtained soon after the passage of the acts ought not to be entirely overlooked. It is not understood that erroneous impressions of law shall govern the courts, however general, in all cases; but when the rights of individuals and the rules of property become ingrafted on any general practice, long acquiesced in, it cannot be lightly set' aside. In cases which would be doubtful on the law, such practice makes the law. And then the maxim implies, communis error facit jus.
Surveyors, who necessarily must be a numerous class of persons, were the most efficient officers of government in carrying the provisions of the land law into effect.
Their practice has been to consider the oldest entry as having the preference in surveying, and that they had a discretion, unless the calls of an entry opposed it, or unless confined by lines of older claims, to run in a square or oblong; and then survey the adjoining entries, so as not to interfere. But as to surveying the oldest entry first, the Acts of 1786, c. 20, 1787, c. 23, are legislative declarations of the previous law; and the Court has no doubt but that view of the pre-existing laws was correct. This being the law, suppose a surveyor surveys a younger entry before an older one, will the situation of the elder enterer be deteriorated? it certainly will not.
He should be in no worse situation than if the surveyor had complied with the injunction of the law, in surveying his, first. That which ought to have been done is in equity considered as done. Coup. 467; 2 Pow. Cont. 56, 58, 59, and the Court will consider it in the same point of view. It is nothing but justice it should be so considered; for the person owning the elder entry should not be deprived of rights, which the law conferred, by the act of a *Page 19 
surveyor (in surveying the youngest first), over which he did not possess any control. The law was so considered in the case of Hocketv. M'Crory. He ought to hold the same land he would have held, had the surveyor done his duty, in surveying the oldest first, and not interfered with any person. And it is a matter of consolation to reflect that such a system as this is calculated rather to prevent disputes than generate them by cutting, squaring, and carving. Every man must know if there is an older entry, the younger must stand aside till that is surveyed; if any is left he takes it, and what is wanting the law allows him to locate elsewhere. For the right of locating elsewhere, see April, 1784, c. 14, § 7; October, 1784, c. 19, § 6; 1785, c. 20, § 7; 1786, c. 3. Acts of North Carolina, 1796, c. 19; 1802, c. 17. Acts of Tenn., 1801, c. 2, § 3; 1806, c. 1, §§ 25, 26, 27; 1807, c. 2, §§ 6, 7.
And for twenty years these have been the principles upon which our courts and juries have acted. Sapientissima res tempus is one of Lord Bacon's aphorisms.
The legislature has not specified the qualities of an entry, nor what certainty it shall contain; we are left to presume such principles as will best answer the ends of justice, and attain the views of the legislature. The Acts of 1777, c. 1, § 5, and 1783, c. 2, § 11, are the only two that can give us any light, and what they give is very imperfect. It is not necessary, as contended, that an entry should contain so much certainty, as to boundary, that others must know, when making an entry previous to a survey of the first, how to adjoin it. That would be so precise and technical a certainty that nothing but a recorded survey could create.[1] This is the view that society at large, and our courts, have formerly entertained of the design of an entry.
The legislature might have required the most precise certainty, and have so expressed itself, there is no doubt; and if it had, we should be obliged to conform to it, but it has not done so, nor did the situation of the country at the time those laws were passed warrant us in thinking that it intended it. The country was unexplored and dangerous. All *Page 20 
the law required in an entry, was certainty to a common intent. That is, in the common understanding of men, the entry should in some part of it contain a reference to some place, natural mark, or thing, which from them, either singly or together, could be ascertained with reasonable industry by those acquainted in its neighborhood.
Entries were not made by professional men, but the common people. Such a construction should be put on them as will enable common persons to understand the place meant. Coup. 682. Impossibilities, or that which is unreasonable, is never required in law.
Bringing these principles to bear on the case before us, let us examine the entry of the defendant. It has five calls.
1st. It is to lie on the third creek, on the south side of Cumberland River, above Stone's River.
2d. About two miles above the mouth of that creek.
3d. It is to include a spring.
4th. An improvement at the spring.
5th. A tree marked with the letters W O at the spring.
This entry in itself contains no such uncertainty as the plaintiff's counsel contend it does.
The first call is partially directory; it does not however ascertain the spot, inasmuch as creeks are frequently many miles in length, and so the entry considers this creek, for the second call states it to be about two miles above the mouth of the creek.
The entry so far is only directory, but not specific.
The next or third call still does not attain precise certainty, as it was customary in those days to make improvements at many lasting springs. It may be that our law gives validity to the elder entry if it *Page 21 
fit one of two places alike situated. On this point no opinion is given. In the fourth call, we approach nearer specialty to every intent, but not yet attained, because there are several springs about that distance from the mouth of the creek, and the entry, in the absence of other locative calls, ought to contain some description by which it might be distinguished from other springs in that neighborhood; as there were many, there is abundant evidence in the present controversy to prove.
If the situation of things had been such that there had been but one spring in that quarter, so that it could not have been mistaken, it would be a different consideration. It hence results that, without the fifth and last call, the entry would in itself be essentially defective, having no other locative call but the marks at the spring; with this call it is intrinsically sufficient, but may be void by matter dehors; as that there were no such marks at the spring as the entry calls for.
Without proof of such marks there, previous to the entry being made, it cannot be seen how it can prevail against the plaintiff's grant.
It has been urged that pre-emptioners frequently obtained claims, not having made the improvements the law required. Whether entitled or not, can never be an inquiry with a court of law or equity. The proceedings of the commissioners, in this respect, were final.
Juror withdrawn, mistrial.
[1] Judge Rone's Opinion, 1 Call. 209.